**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY EMANUEL MANUEL,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | **No. 10-2690** |
| **Defendants.** | : | |

## MEMORANDUM

**Schiller, J.**                                                              **September 14, 2010**

Gary Emanuel Manuel brings federal constitutional and statutory claims against Defendants including the Philadelphia Police Department ("PPD"), the City of Philadelphia ("the City"), and the Federal Bureau of Investigation ("FBI"). Before the Court is the City's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) and Manuel's Opposition. For the reasons set forth below, the City's motion is granted.

## I.    BACKGROUND

Manuel's 158-page Complaint describes a series of conspiracies dating back to the late 1970's. (Compl. at 7, 14.) His allegations fall into four categories: (1) Hannibal Cabbagestalk; (2) the death and estate of Manuel's father, Wesley Banks; (3) electronic surveillance of Manuel; and (4) miscellaneous events. Throughout, Manuel notes that he is mentally disabled and that all Defendants named in this action were aware of his disability. (*See id.* at 24, 28, 65, 144.)

### A.    Hannibal Cabbagestalk

Manuel's narrative begins in the late 1970's with the arrival of Hannibal Cabbagestalk. Federal agents approached Manuel's mother, Jannie Manuel, and compelled her to house

Cabbagestalk, a/k/a Peter Cabbagestalk, at her home in Philadelphia. (*Id*. at 7, 14, 30.) Cabbagestalk, in addition to being an unwanted guest, was a "tool" of the City, PPD and FBI. (*Id*. at 17.)

### B.     The Banks Estate

Manuel resides in Bangor, Maine. (*Id*. at 22, 28.) In early May, 2007, Manuel's father, Wesley Banks, called and informed him that he had purchased an insurance policy "in his name." (*Id*. at 8.) Banks died days later on May 7, 2007. (*Id*. at 8, 104.)

Manuel then traveled to Philadelphia on May 12 or 13, 2007, to claim his share of his father's estate. (*Id*. at 9, 55-56.) Upon his arrival, Manuel discovered a "vagrant," Russell Allen, living in his father's home. (*Id*.) Allen offered to purchase the property from Manuel, but Manuel refused and called the police. (*Id*. at 9, 140-41, 146.) Manuel claims four unnamed police officers and an officer McConnell responded to the call. (*Id*. at 49.) They allowed Allen to remain in Manuel's home and, at some point in this episode, injured Manuel's leg. (*Id*. at 9.) Allen meanwhile took possession of Manuel's deceased father's wallet and other personal property. (*Id*. at 49.)

Manuel returned to the house twice over the following two years, once in the spring of 2008 and once in 2009. During the 2008 visit, Manuel and his son, Peter Manuel, were denied entry to the home by Allen. (*Id*. at 50-51, 59-60, 62.) Manuel had "legal documents" demonstrating his "right to enter," but could not convince PPD officers at the scene to help him evict Allen. (*Id*.) Instead, the officers accused Manuel of firing a weapon into the air. (*Id*. at 50.)

During his 2009 visit to the home, Manuel found a real estate agent named Leon Brown repairing the property. (*Id*. at 52, 126-27.) Brown claimed to have bought the house from Allen and was repairing damage caused by a fire that had occurred while Allen lived in the home. (*Id*.) The

fire had also destroyed much of Banks's personal property in the house. (*Id*. at 141.)

After Manuel's encounter with Brown, he researched the ownership of the property and was informed by a City title clerk that the deed to the home was still in Banks's name. (*Id*. at 126-27.) However, the PPD and FBI had conspired with Allen to sell the property to Brown. (*Id*. at 155.) Specifically, Manuel alleges that the PPD had knowledge of his May 2007 conversation with his father and instructed Allen to break into Banks's safe to steal documents describing Manuel's inheritance. (*Id*. at 9.) To keep him "from taking care of his business," the PPD and FBI continually "scar[ed] [...] Manuel [...] out of Philadelphia." (*Id*. at 103.) Brown was also part of this conspiracy to deprive Manuel of his inheritance. (*Id*. at 134-35.)

In addition to the PPD, Manuel identifies the Philadelphia "Family Court" and "Probate Department" as conspirators. The Family Court refused to provide Manuel with access to child support records from Banks's file. (*Id*. at 51, 73, 89.) The Probate Department also gave him "no service" and, worse, misled him. (*Id*. at 52, 58, 63.)

Manuel also sought help from Cabbagestalk. Despite their long relationship, however, Cabbagestalk refused to assist Manuel and hindered his attempts to obtain legal counsel. (*See id*. at 16.) Cabbagestalk ultimately provided a vehicle through which the City and FBI "purposely interfered" with Manuel's efforts, among other things, by blocking his access to municipal offices to change the deed of his father's former home into his own name. (*Id*. at 17-21.)

Finally, Manuel asserts that these Defendants were assisted by two more co-conspirators, Grace Manuel a/k/a Grace Bowman ("Bowman") and her boyfriend, identified only as "Shannon." (*Id*. at 30-44.) Both Bowman and Shannon work for unnamed City agencies as a registered nurse and as "law enforcement personnel," respectively. (*Id*.) Bowman and Shannon allegedly engage in

"real estate-related transactions" and purposely discouraged Manuel from claiming his inheritance. (*Id*.)

### C.    The Wiretap

In addition to their role in obstructing Manuel from obtaining his father's home, Bowman and Shannon assisted in electronic surveillance of Manuel between 1994 and 2004. (*Id*. at 100.) Specifically, Bowman and Shannon invited Manuel to their home at Tabor Avenue in Philadelphia and encouraged him to speak about "his private business." (*Id*. at 32.) Without his knowledge or consent, the PPD and FBI recorded those conversations. (*Id*. at 16, 100.) Manuel also alleges that the FBI and PPD tapped other locations and phone lines used by him. (*Id*. at 155.) The City then disclosed this information between 1994 and 2004 to portray Manuel as a "snitch" among his neighbors, forcing him to leave Philadelphia for his own safety. (*Id*. at 7, 16, 101, 103, 107, 109, 123.)

### D.    Miscellaneous Events

Manuel also complains of the following:

1.    A scheme involving "over 100 predicate acts spanning an eight-year period" to "block plaintiff's exposure of a pattern of hard-core air-disaster-related corruption," which "adversely affected those injured and killed in airline crashes associated with the corruption plaintiff sought to expose and correct." (*Id*. at 3-4.)

2.    A conspiracy to conceal "a pattern of corrupt and criminal acts related to specific to the Civil case Mr. Manuel had in 2005 against the Philadelphia Department for assault focused on inflicting injuries from 2001 to the present

date." (*Id*. at 6.)

3. The Philadelphia Housing Authority wrongfully refused to allow him or his mother to purchase a home through a rent-to-own program he alleges existed between 1996 and 2004. (*Id*. at 7, 14.)

4. That he was wrongfully denied a jury trial in his earlier case against the City. (*Id*. at 8.)

5. That Defendants' "methods of administration ... have the effect of subjecting individuals with mental disabilities and people of color to discrimination." (*Id*. at 83.)

6. That the City, PPD and FBI seized property belonging to him from various locations in Philadelphia, including "Storage Place, in Philadelphia, PA," between 1997 and 2005. (*Id*. at 102-03.)

7. That his birth certificate and social security card were altered "by or through the authority of the Philadelphia Police Department or Federal Bureau of Investigation." (*Id*. at 104.)

8. That he was deprived of assistance he required to arrange his father's funeral. (*Id*. at 105.)

9. That Defendants conspired to "deprive Mr. Manuel [of] a real [m]arriage" to Eunice Manuel, "blaming two children on Mr. Manuel [...] but the boy[s] [are] not of Mr. Manuel's seed, furthermore the [Defendants] conspired to stop Mr. Manuel from hav[ing] a chance to procreate by coercion, mak[ing] his suppose to be wife [sic] tie her fallopian tube[s]." (*Id*. at 154.)

10.     That Defendants' actions have enslaved him in violation of the Thirteenth
        Amendment.  (*Id*. at 156.)

## II.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate dismissal of complaints which  fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Courts look to the complaint and attached exhibits in ruling on a motion to dismiss.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court accepts "as true  all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them in the light most favorable to the non-moving party for the purposes for this analysis.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The defendant bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted.  *See Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). In addition, the Court will construe Manuel's complaint liberally as he is proceeding pro se.  *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

The Third Circuit applies a two-part analysis to determine whether claims survive a Rule 12(b)(6) motion to dismiss.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim, accepting well-pleaded facts as true, but disregarding legal conclusions.  *Id*.  Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief.  *Id*. at 211 (citing *Phillips*, 515 F.3d at 234-35).  If the well-pleaded facts "do not permit the court to infer more than

the mere possibility of misconduct," the complaint should be dismissed for failure to state a claim. *Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

## III.    DISCUSSION

Manuel alleges violations of the Fourth, Fifth and Fourteenth Amendments, 18 U.S.C. § 241, 42 U.S.C. §§ 241-42, 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and various provisions of both the Americans with Disabilities Act and the Fair Housing Act. Construing his Complaint liberally, the Court may also discern a defamation claim in his pleadings. (*See* Compl. at 73, 89, 115.) (alleging that Defendants' actions toward Manuel were "defamatory" and adversely impacted his "good name [and] character" among his neighbors in Philadelphia.)

Addressing these claims in turn, the Court concludes that Manuel fails to plead facts sufficient to support a plausible claim for relief under any theory.

### A.    Claims Against the Philadelphia Police Department

The PPD is an instrumentality of the City of Philadelphia and cannot be sued separately from the City. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). Because the PPD and the City are essentially a single entity, all suits against the PPD must be brought against the City itself. *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 377 (E.D. Pa. 1995). The Court will therefore dismiss Manuel's claims against the PPD. In any event, if Manuel were to file a new complaint against the City including the allegations now made against the PPD, it would nevertheless be dismissed under Rule 12(b)(6) for the reasons that follow.

### B.    Claims Against the City of Philadelphia

### 1.    Manuel's Claims Under 18 U.S.C. § 241

Manuel asserts violations of 18 U.S.C. § 241, a federal criminal statute.  (Compl. at 11, 21, 24, 56.)  A private individual may only sue under a federal statute if Congress intended to create a private right of action.  *Walthour v. Herron*, Civ. A. No. 10-1495, 2010 WL 1877704, at *2 (E.D. Pa. May 6, 2010) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  There is no private right of action provided for in 18 U.S.C. § 241.  *Walthour v. Gibson*, Civ. A. No. 10-682, 2010 WL 3419675, at *3 (E.D. Pa. Aug. 27, 2010).  The Court will thus dismiss Manuel's claims under this statute.

### 2.    Manuel's Claims Under 42 U.S.C. §§ 241-42

Manuel cites 42 U.S.C. §§ 241-42 accompanying allegations that Defendants conspired to deprive him of various rights. (Compl. at 11, 19, 21, 34, 43, 56, 88.)   These statutes define the powers and duties of the U.S. Public Health Service as they pertain to research and studies on the use of narcotic drugs.  These statutes do not anticipate a private right of action appropriate to the relief Manuel seeks.  The Court will thus dismiss Manuel's claims under 42 U.S.C. §§ 241-42.

### 3.    Manuel's Claims Under the Declaratory Judgment Act

Manuel seeks declaratory relief under 28 U.S.C. § 2201.  The Declaratory Judgement Act is intended "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued."  *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (3d Cir. 1974).  The Declaratory Judgment Act is thus "inappropriate solely to adjudicate past conduct."  *Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993).  The Supreme Court has noted that, "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts

unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

Manuel's claims for declaratory relief consist of general allegations that he and his "constituents" are not receiving "services" in "the most integrated setting" and requests that the Court "determine" or "reinstate" his "federally guaranteed rights." (*See* Compl. at 138.) The Court finds no evidence of continuing conduct warranting declaratory relief. The Court will thus dismiss Manuel's claims for declaratory relief against the City.

### 4.     *Manuel's Claims Under 42 U.S.C. § 1981*

Manuel alleges Defendants violated § 1981 by purposely interfering with his access to legal assistance. (Compl. at 46.) To state a claim under § 1981, a plaintiff must allege: (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendants; and (3) discrimination concerning one or more of the activities enumerated in § 1981. *Evans v. Chichester Sch. Dist.*, 533 F. Supp. 2d 523, 537 (E.D. Pa. 2008) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). The statute requires that plaintiffs show "purposeful discrimination" traceable "to a discriminatory purpose." *Id.* (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982)). Further, § 1981 only allows claims arising from "discrimination based on race or color." *Pondexter v. Allegheny County Hous. Auth.*, Civ. A. No. 04-536, 2007 WL 3120289, at *7 (W.D. Pa. Oct. 23, 2007) (citing *Springer v. Seaman*, 821 F.2d 871 (1st Cir. 1987)).

Although Manuel complains that Defendants have subjected "people of color to discrimination," Manuel does not plead that he is a member of a racial minority or that Defendants acted with an intent to discriminate on the basis of race. He thus fails to state a cause

of action under § 1981.  (*See* Compl. at 83.)

5.     *Manuel's Claims Under 42 U.S.C. § 1982*

"Like § 1981, § 1982 is a Reconstruction statute enacted to effectuate the aims of the Thirteenth and Fourteenth Amendments to the Constitution." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).  The requirements for a § 1982 claim are thus "quite similar" to the prerequisites for a claim under § 1981.  *Id.*  Specifically, plaintiffs must "allege with specificity facts sufficient to show or raise a plausible inference of (1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of race."  *Id.*

Manuel's claims under § 1982 suffer from the same deficiencies as his claims under § 1981.  As noted above, Manuel does not allege that he is a member of a racial minority, nor does he allege specific facts suggesting that Defendants acted with intent to discriminate on the basis of race or racial animus.  Manuel thus fails to state a cause of action under § 1982.

6.     *Manuel's Claims Under 42 U.S.C. § 1983*

Manuel seeks to recover against the City under § 1983.  Plaintiffs must establish that a state actor engaged in conduct that deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States to state a claim under § 1983.  *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

Claims against municipalities may be brought under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  However, a municipality will be liable for the unconstitutional actions of its agents only if the agent's conduct was the result of a municipal policy which is "so permanent and well settled as to constitute a custom or usage with the force of law."  *Id.* at 691.  *See also Marcavage v. City of Philadelphia*, Civ. A. No. 04-4741, 2006 WL 2338261, at *9 (E.D. Pa. Aug.

9, 2006). There must be a direct causal link between the policy or custom and the violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214-15 (3d Cir. 2001). "Plaintiff must show more than a few incidents to establish a municipal custom that is sufficiently permanent and well-settled to virtually constitute law." *Marcavage*, 2006 WL 2338261, at *9.

Manuel alleges that PPD officers and numerous private individuals acting as City or PPD agents conspired to deprive him of his rights and property. (*See* Compl. at 9, 17-21, 30-44, 49.) However, even assuming Manuel's alleged injuries all occurred at the hands of City agents or departments, it does not appear from the Complaint that Manuel's claims arise from City policy or custom. Manuel thus fails to state a cause of action against the City under § 1983.

Manuel's defamation claim must fail under § 1983 as well. Manuel claims that the City and PPD informed his neighbors that he was a police informant. Compl. at 7, 16, 101-03. The City does not specifically address this claim, but instead states that Manuel's claims "are conclusory and without sufficient factual support" and do not "raise Plaintiff's claimed right to relief beyond the level of mere speculation." (City's Mot. to Dismiss at 6-7.)

In any event, defamation claims are not cognizable under § 1983. *Cox v. Delaware State Police*, Civ. A. No. 07-349, 2007 WL 2104543, at *3 (D. Del. July 19, 2007) (citing Daniels v. Williams, 474 U.S. 327, 332 (1986)) (additional citations omitted). Thus, to the extent Manuel seeks to recover for defamation under this statute, his Complaint fails to state a claim upon which relief can be granted.

Assuming Manuel intended to bring his defamation claim under Pennsylvania law rather than § 1983, the claim should be dismissed as time-barred. The statute of limitations for defamation in

11

Pennsylvania is one year. *See Vurimindi v. Fuqua School of Business*, Civ. A. No. 10-234, 2010 WL

3419568, at *12 (E.D. Pa. Aug. 25, 2010) (citing 42 Pa. Cons. Stat. Ann. § 5523(1)). Manuel alleges

the City released defamatory information about him between 1994 and 2004, six years before he filed

his Complaint in this case. (*See* Compl. at 7, 16, 101, 103, 107, 109, 123.) Manuel's claim would

thus be dismissed on statute of limitations grounds if the Court interpreted his pleadings as intending

to bring a defamation action under Pennsylvania law.

### 7. *Manuel's Claims Under 42 U.S.C. §§ 1985 and 1986*

Manuel alludes to violations of his rights under 42 U.S.C. § 1985. (Compl. at 3, 21, 24.)

Although Manuel does not identify which provision of § 1985 he intends to invoke, given the nature

of his factual allegations the Court will construe his claim as one for relief from a conspiracy to

violate his rights under § 1985(3).

To state a claim under § 1985(3), plaintiffs must allege: (1) a conspiracy for the purpose of

depriving the plaintiff of the equal protection of the laws or equal privileges and immunities under

the laws; (2) an act in furtherance of the conspiracy; (3) injury to a person or property or deprivation

of any right or privilege of U.S. citizenship; and (4) that the defendants were motivated by class-

based discriminatory animus. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006);

*Schnabel v. Bldg. & Constr. Trades Council*, 563 F. Supp. 1030, 1039 (E.D. Pa. 1983). A claim of

conspiracy under this statute requires specific factual allegations that the alleged co-conspirators

colluded or acted in concert, including the duration of the conspiracy, its object, and actions taken

to achieve the conspiracy's purpose. *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700

(3d Cir. 1993); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

Manuel's § 1985 claim fails because it does not allege that Defendants acted with

discriminatory animus. Manuel's factual allegations regarding Defendants' conspiracy also lack the specificity required to state a claim under § 1985. Manuel asserts throughout his Complaint that Defendants often "conspire[d] together." *See*, *e.g.*, compl. at 72. However, Manuel does not allege specifically when or how the alleged conspirators coordinated their activities. Manuel's assertion that the conspiracy occured over four "stages" spanning the past thirty years also fails to pinpoint the duration of the conspiracy or conspiracies Manuel cites in his Complaint. *Id.* at 6-9. Manuel thus fails to state a claim under § 1985.

### 8.   *Manuel's RICO Claims*

Manuel seeks to hold the City and other Defendants responsible for a scheme to conceal air travel safety hazards in violation of RICO. (Compl. at 3-4.) Courts have interpreted the RICO statute to prohibit civil RICO lawsuits against municipalities. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991). *See also Evans v. City of Chicago*, 434 F.3d 916, 928 n.23 (7th Cir. 2006) ("[i]t is unlikely that [Congress] would have had the foresight to see [RICO] being utilized in an action against a municipality or its police officers ...."). Manuel thus fails to state a RICO claim against the City.

### 9.   *Manuel's Claims Under the Americans with Disabilities Act*

Manuel alleges the City violated Title II of the Americans with Disabilities Act ("ADA"), as well as the Act's anti-retaliation provisions. (Compl. at 12, 22-23, 32, 36, 38, 57-58.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a disability to include mental impairments that substantially limit one or more major

life activities. *Id.* § 12102(2).

Manuel pleads that he suffers from a disability which substantially limits one or more major life activities. (*See* Compl. at 65.) As the City is a public entity under the ADA, the Court must determine whether Manuel's factual allegations sustain a plausible claim that he was denied the benefits of a service, program, or activity of the City by reason of his disability. *See Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 717 (E.D. Pa. 2007). However, Manuel does not allege what benefits or services he failed to obtain beyond his repeated complaints that various City departments or individuals did not help him. Manuel thus fails to state a claim under Title II of the ADA.

The ADA also prohibits discrimination against those who have "opposed any act or practice made unlawful" under the ADA, or who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a). An ADA retaliation claim requires a showing that: (1) the plaintiff engaged in protected activity; (2) the retaliator knew the plaintiff was involved in the protected activity; (3) an adverse action was taken against the plaintiff and (4) a causal connection exists between the protected activity and the adverse action. *P.N. v. Greco*, 282 F. Supp. 2d 221, 243 (D.N.J. 2003) (citing *Weixel v. Bd of Educ. of New York*, 287 F.3d 138, 148 (2d Cir. 2002)).

Manuel claims he engaged in protected activity by bringing a civil case against the City in 2005. (Compl. at 6, 8.) However, Manuel fails to state a claim for retaliation because he has not alleged that the Defendants were motivated by or even aware of his earlier lawsuit. Manuel's claims under the ADA will thus be dismissed.

In addition, to the extent Manuel's ADA claims might be brought under § 1983, he has failed to allege the existence of a municipal custom or policy sufficient to support such claims. *Cf. P.N.*,

282 F. Supp. at 242 (discussing ADA claims brought pursuant to § 1983).

    10.  *Manuel's Claims Under the Fair Housing Act*

  Manuel brings claims under the Fair Housing Act, citing 42 U.S.C. §§ 3605 and 3617. 42 U.S.C. § 3605 makes it unlawful for any person whose business includes engaging in residential real estate-related transactions to discriminate on the basis of race or disability, including mental illness. *Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F. Supp. 2d 643, 651 (W.D. Pa. 2003) (citing 42 U.S.C. 3602(h)). The statute also prohibits coercion, intimidation, threats against or interference with any person in the exercise or enjoyment of rights granted or protected by the Fair Housing Act under the second provision Manuel cites, § 3617.

  Although Manuel pleads that Defendants were aware of his disability, he fails to plead that he was discriminated against because of his disability or that the City in any way interfered with his rights under § 3605. Manuel's claims under the Fair Housing Act will thus be dismissed.

    11.  *Manuel's Claims Under the Privacy Act of 1974*

  Manuel claims the City violated his rights under the Privacy Act of 1974, 5 U.S.C. § 552. This law provides a civil remedy for an agency's failure to comply with the Privacy Act. *Pennyfeather v. Tessler*, 431 F.3d 54, 55-56 (2d Cir. 2005). There is, however, no private right of action against state or municipal agencies or their officials or employees under this statute. *Id*. Manuel thus fails to state a claim against the City under the Privacy Act of 1974.

## IV. CONCLUSION

  In conclusion, Manuel fails to state any claim against the City upon which relief can be granted. An Order consistent with this Memorandum will be docketed separately.